## Thompson Lumber Co. v. Mutual Fire Insurance Company for the use of Thomas Parker, Receiver.

## Donahue et al. v. Same.

1. ULTRA VIRES—*Insurance Companies:*—An insurance company created by a special act authorizing it to insure dwelling houses, household furniture, farm buildings and other property, may lawfully· insure a saw mill or the contents of a printing office.

2. SAME—*Estoppel to Assert Mutuality.*—Where a person in good faith procures a policy from an insurance company and receives the benefit of the same while the insurance company has the detriment, each is estopped to deny the validity of the contract.

3. SAME—*Corporations can not Assert.*—Although a corporation makes a contract in violation of the express terms of its charter, it must account for the benefits received from the same.

4. CONSTRUCTION OF STATUTES—*Manifest Intention of the Legislature.*—Where the legislature chartered an insurance company to insure dwelling houses, household furniture, farm buildings and other property, its manifest intention must have been to empower the company to insure other property as well as dwelling houses, household furniture and farm buildings.

5. MUTUAL INSURANCE COMPANIES—*Proceedings to Appoint a Receiver—Who are not Bound.*—A person who is not a policy holder in a mutual fire insurance company at the time, is not bound by the proceeding for the appointment of a receiver and of the making of an assessment by the court.

**Assumpsit,** on a premium note. Appeals from the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 29, 1896.

### STATEMENT OF THE CASE.

March 11, 1869, the legislature of Illinois passed a general law for the incorporation and government of fire, marine

and inland navigation insurance companies, doing business in the State of Illinois. By an emergency clause, the act was put into effect the same day.

By the first section of the original act (which has been since extended to authorize insurance against lightning (1879) and tornadoes (1891), it was provided that any number of persons, not less than the thirteen, might associate and form an incorporated company to make insurance on dwelling houses, stores and all kinds of buildings, and upon household furniture and other property, and against loss or damage by fire, and the risks of inland navigation and transportation, and that any company declaring its intention to make insurance against loss or damage by the risks of inland navigation or transportation, should have power to make insurance upon vessels, boats, cargoes, goods, merchandise, freights and other property, against loss and damage by all or any of the risks of lake, river, canal and inland navigation and transportation. The sections next following specify the method of organization and government. The nineteenth section of the act is in part as follows :

" Section 19. All insurance companies heretofore organized in the State of Illinois, and now doing business in this State, are hereby brought under all the provisions of this act."

The act does not contain any other provisions, subjecting insurance companies specially chartered, to regulation and control by the general insurance law.

March 26, 1869, the appellee was chartered by an act of the legislature of the State of Illinois, as the Libertyville Mutual Insurance Company (Laws of 1869, 536).

By the first section of its charter, Samuel Galloway and six others and their associates were created a body politic and corporate, by the name of the "Libertyville Mutual Insurance Company, for the purpose of insuring dwelling houses, household furniture, farm buildings and other property against loss or damage by fire," and by their corporate name were authorized to sue in any court in the State. The company was authorized to have a common seal, to make

ordinances, and to do all acts and things necessary to carry into effect the provisions of the charter.

The second section provided that "all persons holding policies of insurance in this company shall be members thereof and entitled to vote upon any matter to be determined by a vote of the company, and a plurality of the votes cast, shall be sufficient and decide any matter voted on."

The third section invested the board of directors with power to manage the affairs of the company, and prescribed that the election of directors should be by ballot, and defined a quorum.

The fourth section directed the elections to be held in the county of Lake upon notice, and limited the term of the directors to one year.

The fifth section declared the names of the several offices.

The sixth section: "The rates of insurance shall be fixed and regulated by the company, and premium notes may be received from the insured, and shall be paid at such times and in such sums as the directors shall from time to time require for losses or expenses," but never more than enough to pay losses and expenses; the premium notes constitute the capital stock of the company.

The seventh section provides that members shall be liable for their proportion of all losses and expenses accruing during the time for which their policies were issued, not exceeding the amount of their premium notes; neglect for more than thirty days' assessment shall avoid policy, but the member is not thereby relieved from payment.

The eighth section authorizes the board of directors to establish rules whereby applications for insurance may be in writing.

The ninth section authorizes re-insurance by the company of any of its risks.

The tenth section provides for the establishment of rules to secure prompt and impartial settlements.

The eleventh section makes the members of the company

competent witnesses in any lawsuit between the company and any of its members, where the witness is not interested further than his appropriation of loss as a member of the company, and provides that the certificate of the secretary or treasurer shall be *prima facie* evidence of the amount of any premium note or other matter pertaining to his office; that the party suffering loss may be examined under oath.

The twelfth section declares the act to be a public act, to take effect from and after its passage.

In 1882 the Libertyville Mutual Fire Insurance Company, of Lake county, Illinois, changed its name to the Mutual Mill Insurance Company, and moved its offices from Lake county to Cook county.

In 1886 the Mutual Mill Insurance Company changed its name to the Mutual Fire Insurance Company, of Chicago. In neither of these proceedings was it attempted to enlarge the powers of the corporation. The Mutual Fire Insurance Company, of Chicago, Illinois, has therefore precisely the same powers as the Libertyville Mutual Insurance Company.

In 1889, the appellant procured two policies of insurance from the appellee, on its saw mills and machinery in Washburn, Bayfield county, Wisconsin.

In July, 1890, appellant returned its policies to appellee, and the policies were canceled by the appellee.

In October, 1890, the auditor of the State ordered an examination of appellee's affairs, pending which (October 28th) appellee made an ineffectual attempt to assign for the benefit of its creditors.

In November, 1890, an information was filed by the attorney-general for the appointment of a receiver and for the winding up of the company, under the authority of an act of 1874, entitled "An Act in Regard to the Dissolution of Insurance Companies." 1 S. & C. R. S., Ill., p. 1353. To this proceeding appellee and each of its directors were made parties defendant, and were duly served with process, in compliance with section nine of the act above cited:

"The mode of summoning parties into court, the rules of practice, course of procedure, and powers of courts, in cases

rising under this act, shall be the same as in ordinary proceedings in equity in this State, except as herein otherwise provided."

The appellant was not named as party defendant, and no process ever issued against it at any time during the information proceedings.

In February, 1891, Thomas Parker, Jr., was appointed receiver, and an order of reference was had to Jacob R. Custer, as special master, to take proof of claims against appellee, and to state an account of the amount of the assets of the appellee, and of how much should be paid by the makers of the premium notes respectively to discharge the indebtedness of the company.

The master accordingly brought in a report, wherein he listed all persons who then held, or who had recently held, policies of insurance. The report was filed June 5, 1891, and recommended an assessment of sixty-five per cent upon the actual total liability of each policy holder. July 3, 1891, an order was entered in the cause confirming the master's report and ordering the assessment he recommended.

It was not till after this date that any attempt was made to notify appellant of the information proceedings.

WOOD & OAKLEY, attorneys for appellant.

A charter granted to a corporation by the legislature of a State, being in a sense a grant of sovereignty, is strictly construed. In re Swigert, 119 Ill. 83; Fertilizing Co. v. Hyde Park, 97 U. S. 659–666; 1 Morawetz on Corporations, Secs. 392, 393; Sutherland on Statutory Construction, Secs. 382, 456.

In the construction of statutes, a word of general description following a specific enumeration of objects or things will be held to include only such objects or things as are of the same kind as those specifically enumerated. In re Swigert, 119 Ill. 83; Shirk v. The People, 121 Ill. 61; Canadian Bank v. McCrea, 106 Ill. 281; American Ins. Co. for use, etc., v. Arbuckle, 32 Ill. App. 369; Marquis v. Chicago, 27 Ill. App. 251; Brush v. Lemma, 77 Ill. 496; Drake

v. Phillips, 40 Ill. 388; Sutherland on Statutory Construction, Secs. 268–281.

If any doubt exists, the court may resort to contemporary legislation to aid in the construction. Fertilizing Co. v. Hyde Park, 97 U. S. 659; Isaacs v. Steel, 3 Scam. 97; Phoebe v. Jay, Breese, 268.

When a statute or charter grants privileges to persons possessing specified qualifications, those who lack such qualifications are excluded from the privileges granted. This is but a phase of the maxim "*Expressio unius est exclusio alterius.*" Sutherland on Stat. Construction, Secs. 327, 328; Gaddis v. Richland Co., 92 Ill. 119.

When the powers of a corporation are expressly defined by public statute, contracts between the corporation and its members, or those believed to be or believing themselves to be its members, are void unless they are within the corporaate power; and no distinction exists between executed and executory contracts in such cases. Rockhold v. Canton Masonic Benev. Society, 129 Ill. 440; Eddy v. Merchants, etc., Mutual Fire Ins. Co., 40 N. W. Rep. 775.

In the provision of the constitution that no person shall be deprived of property without due process of law, the words "due process of law," mean legal proceedings in accordance with those rules and forms which have been established for the protection of private right. Board of Education v. Bakewell, 122 Ill. 339; Westervelt v. Gregg, 2 Kern. 209.

A judgment is conclusive only as to those matters upon which the pleadings raise an issue or which are a necessary part of an issue. Dulin v. Prince, 29 Ill. App. 209; Chicago v. Cameron, 22 Ill. App. 91; Jenkins v. International Bank, 111 Ill. 462; Althrop v. Beckwith, 14 Ill. App. 628.

The decree in the information proceedings ordering the assessment is of no greater force than a resolution by the appellee's board of directors ordering the assessment. Great Western Telegraph Co. v. Lowenthal, 154 Ill. 261.

The appellant, which is a corporation, can not become a member of the appellee, which is also a corporation. People

ex rel. v. Chicago Gas Trust Co., 22 N. E. Rep. 798; 130 Ill. 268.

D. J. SCHUYLER and C. W. GREENFIELD, attorneys for appellee.

The decree levying the assessment is not open to collateral attack. Great Western Telegraph Co. v. Gray, 122 Ill. 630; Ward v. Farrell, 97 Ill. 563; Hawkins v. Glenn, 131 U. S. 319; Glenn v. Leggett, 135 U. S. 533; Sanger v. Upton, 91 U. S. 56; Smith v. Hopkins, 38 Pa. Rep. 854; Rand, McNally & Co. v. Mutual Fire Ins. Co., 58 Ill. App. 528; Parker, Receiver, v. Stoughten Mill Co., 64 N. W. Rep. 751; Mutual Fire Ins. Co. v. Phœnix Furniture Co., 66 N. W. Rep. 1095.

The language of the charter is sufficient to authorize the issuing of the policies, and the act of the insurance company in issuing them was therefore not *ultra vires*. Sutherland on Stat. Cons., Sec. 278, page 360.

The policies being executed contracts to the extent of the losses and expenses which accrued against the company while they were in force, appellants are now estopped to set up the defense of *ultra vires*. Darst v. Gale, 83 Ill. 139; Bradley v. Ballard, 55 Ill. 413; Gas Co. v. Gas Co., 20 Ill. App. 494; Alexander v. Tolleston Club, 110 Ill. 73; Brown v. Mortgage Co., 110 Ill. 235; Bank v. Matthews, 98 U. S. 629.

Appellants, having in their dealings with the insurance company recognized the authority of the company to issue the policies, can not now deny that it was authorized so to do. City of Helena v. Turner, 36 Ark. 577; St. Joseph F. & M. Ins. Co. v. Hauck, 71 Mo. 465; National Bank v. Matthews, 98 U. S. 629.

All policy holders in a mutual fire insurance company, being members thereof and liable for their proportionate shares of all losses and expenses which accrue to the company while their policies are in force, appellants can not now deny their liability, after the insurance company has become insolvent and others have been induced to accept

Thompson Lumber Co. v. Mutual Fire Ins. Co.

policies in the company upon the strength of the member-ship of appellants in such company, and their agreement and liability to pay their proportionate shares of all losses and expenses of the insurance company, which might there-after accrue in favor of such policy holders and members. Dettra, Receiver, v. Kestner, 23 At. Rep. 889, 147 Pa. St. 566; Graff v. R. R. Co., 31 Pa. St. 489; Miller v. R. R. Co., 87 Pa. St. 95; Miner v. Bank, 1 Peters (U. S.) 66; Turner v. Ins. Co., 65 Ga. 649; Booth v. Clark, 17 How. (U. S.) 331; Taylor on Private Corporations, Secs. 5, 23.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

A person who was at no time a policy holder of the Mutual Fire Insurance Co., is not bound by the proceeding for the appointment of a receiver and the making of an assessment.

Were either of appellants policy holders ?

It is insisted that the company, being incorporated, as is stated in its charter, "for the purpose of insuring dwelling houses, household furniture, farm buildings and other prop-erty against loss or damage by fire," could not insure a saw mill or the contents of a printing office.

Sec. 1 of Chap. 131 of the R. S. is as follows:

"1. GENERAL RULES: Sec. 1. Be it enacted by the People of the State of Illinois, represented in the General Assembly, that in the construction of all statutes now in force, or which may hereafter be enacted, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the same statute; that is to say :

First. All general provisions, terms, phrases and expres-sions shall be liberally construed in order that the true intent and meaning of the legislature may be fully carried out.

The manifest intention of the legislature would seem to have been to empower the company to insure dwelling houses and other property, because the legislature said that the company might do so. If the legislature had not

intended to authorize the insurance of other property, it would have stopped with the mention of specific kinds.

Whatever view may be taken of the charter, the insurance of a saw mill, and the contents of a printing office were, in neither case, in manifest and plain excess of powers conferred. In perfect good faith might each policy have been issued. Such being the case, in this proceeding neither of appellants can derive advantage from the doctrine of *ultra vires*. Each received a policy of insurance from the insurance company; had the benefit of such contract, while the insurance company had the detriment; and each is estopped to deny the validity of the executed contract. McCormick v. Market Nat. Bank, 61 Ill. App. 33–42; Darst v. Gale, 83 Ill. 139–141; Bradley v. Ballard, 55 Ill. 417; Chicago Bldg. Society v. Crowell, 65 Ill. 458.

The proceeding under which appellants have been assessed was in a court of equity. Appellants had a right there to appear and show what equitable reasons, if any, existed, why they should not be required to do equity, viz., pay what the insurance of their respective properties had cost.

Although a corporation has made a contract in violation of the express terms of its charter, yet it must account for benefits received thereunder. McCormick v. Market Nat. Bank, 61 Ill. App. 33–42; Green's Brice's Ultra Vires, 717.

We see no good reason why appellants should not account for benefits received, and we do not understand that by the judgments below they are made to do more than this.

The judgments of the Circuit Court are therefore affirmed.